# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE G. RAMÍREZ-ALONSO,

      Plaintiff,

      v.

M/Y THE COMMISSIONER, *in rem*,
MICHAEL P. GIANNOPULOS, *in personam*,

      Defendants.

Civil No. 20-1451 (BJM)

## OPINION & ORDER

Alleging unpaid seaman's wages, Jose G. Ramírez-Alonso ("Ramírez") invoked the court's admiralty jurisdiction to bring this *in rem* action against M/Y the Commissioner ("the Commissioner"), a yacht, and an *in personam* suit against Michael Giannopulos ("Giannopulos"). Docket No. ("Dkt.") 1. Giannopulos, Caribbean Island Excursions, Corp. ("Caribbean"), Water Time Charters ("Water"), and Huntington National Bank ("HNB") (collectively "claimants") filed statements of interest with respect to the vessel. Dkts. 19, 20, 31. Ramírez moved to strike as untimely the statements filed by Giannopulos, Caribbean, and Water. Dkt. 23. They opposed. Dkts. 55, 60. Ramírez also moved for an order requiring claimants to share in the costs of custodial expenses related to the arrest of the Commissioner. Dkt. 35. Claimants opposed. Dkts. 48, 54, 59. This case is before me by consent of the parties. Dkt. 52. For the following reasons, Ramírez's motions to strike and for allocation of custodia legis expenses are **DENIED**.

## BACKGROUND

On August 31, 2020, Ramírez filed a verified complaint alleging that he holds a maritime lien over the Commissioner as a result of unpaid seaman's wages. Dkt. 1 at 1-2. Ramírez alleged that he joined the crew of the Commissioner in March 2019 and performed all his duties. *Id.* ¶ 8. He and Giannopulos, the owner of the vessel, had agreed to payment of $1,153.85 per week, but Giannopulos failed to pay Ramírez's wages, even after Ramírez demanded payment. *Id.* ¶¶ 7-9. He now claims to be due $48,461.70 in unpaid wages. *Id.* ¶ 9. He also seeks penalty wages in the

amount of two-days' pay for each day payment is delayed pursuant to 46 U.S.C. § 10313. *Id.* ¶ 14. Ramírez calculated that these penalty wages amounted to $149,345.04 as of August 6, 2020, and explained that they would continue to accrue at a rate of $329.68 per day. *Id.*

On September 1, this court ordered the arrest of the Commissioner and required Ramírez to deposit $5,000 with the U.S. Marshal to cover expenses, including, but not limited to, dockage, keeper's fees, maintenance, and insurance. Dkt. 8. At Ramírez's request, the court also appointed Marina PDR Operations LLC as substitute custodian of the Commissioner. Dkt. 11.

Jorge Cintron ("Cintrón") arrested the Commissioner on September 1. *See* Dkt. 16. According to his declaration, he served on Marina PDR Operations LLC, through Mara Ruiz, the following documents: the verified complaint, a certified copy of the warrant of arrest of vessel, a certified copy of the order deputizing him to act in lieu of the U.S. Marshal, and a certified copy of the order appointing substitute custodian. *Id.* He then boarded the Commissioner and posted the same documents to the wall behind the helm. *Id.* Subsequently, a man named Juan Carrasquillo ("Carrasquillo") boarded the vessel and identified himself as the captain. *Id.* Cintrón then served the same documents on Carrasquillo. *Id.*

On September 15, notice of the action was published in *El Nuevo Día*. Dkt. 22-1. That notice included the following language:

> [A]ny person asserting a right of possession or any ownership interest in the [Commissioner] and/or all her engines, tackle, gear, appurtenances, etc. or other interests in the vessel, must file a verified statement of [] interest with the Clerk of the Court and a copy thereof served upon attorneys for plaintiff within fourteen (14) days after the publication of this notice.

Dkt. 22-1. On September 29, Giannopulos, Caribbean, and Water all filed statements of interest with respect to the vessel. Dkts. 19 and 20. Caribbean asserted that it had a proprietary interest in the Commissioner, and Water stated that it had the right of possession. Dkt. 19. Giannopulos stated that he was the record owner of the vessel, that he had sold the vessel to Caribbean, and that he was entitled to its possession. Dkts. 20, 20-1. He also explained that, when he originally purchased the Commissioner, he executed a mortgage in favor of HNB. Dkt. 20-1. On October 14, HNB also

filed a statement of interest, explaining that it had loaned Giannopulos $285,000 to purchase the Commissioner, that it had perfected the relevant mortgage, and that, because the loan and mortgage remained outstanding, it had a preferred maritime lien over the vessel. Dkt. 31.

## DISCUSSION

Ramírez moves to strike as untimely the statements of interest of Giannopulos, Caribbean, and Water and argues that Giannopulos lacks standing to file a claim. He also wishes to share with claimants in the costs associated with custody of the Commissioner. Claimants maintain that their statements of interest were timely, or that, alternatively, any late filing should be excused. They also argue that the sharing of custodial costs is inappropriate given Ramírez's claims, which they contend are highly exaggerated and lacking any legal basis.

Because this case arises under the court's admiralty and maritime jurisdiction, "a host of special rights, duties, rules, and procedures" apply. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). Ramírez brought both an in personam suit against Giannopulos and an in rem action against the Commissioner. *See* Dkt. 1. The action against the Commissioner is based on a maritime lien, which "cannot be executed or divested outside of an in rem proceeding." *Luis A. Ayala-Colon Sucres., Inc. v. Break Bulk Services, LLC*, 925 F. Supp. 2d 199, 202 (D.P.R. 2013) (quoting *Vandewater v. Mills*, 60 U.S. 82, 89 (1856)). Parties' timeliness dispute relates to the in rem action, which is brought against the vessel itself, rather than against the owner. *See Puerto Rico Ports Authority v. BARGE KATY–B*, 427 F.3d 93 (1st Cir. 2005).

Rule C of the Supplemental Admiralty and Maritime Claims Rules contains special provisions governing actions in rem. A plaintiff brings an action against a vessel by filing a verified complaint describing with reasonable particularity the property that is the subject of the suit. Supp. R. C(2). If the court finds that "conditions for an action in rem appear to exist," it orders the clerk "to issue a warrant for arrest of the vessel." Supp. R. C(3). The Marshal then serves the warrant for arrest of the vessel pursuant to Supplemental Rule E. *See* Supp. R. C(3)(b); Supp. R. E(4); *United States v. Approximately Two Thousand, Five Hundred Thirty-Eight Point Eighty-Five Shares (2,538.85) of Stock Certificates of Ponce Leones Baseball Club, Inc.*, 988 F.2d 1281, 1284

Ramírez-Alonso v. M/Y the Commissioner, *et al.*, Civil No. 20-1451 (BJM)                                    4

(1st Cir. 1993). Those with ownership or possessory interests in the vessel must come forward to defend that interest:

> In an action in rem [,] a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest: (A) within 14 days after the execution of process, or (B) within the time that the court allows.

Supp. R. C(6). Generally, filing a verified statement of interest "is a prerequisite to the right to file an answer and defend on the merits," and "[a] party who fails to file a claim normally lacks standing." *United States v. One Dairy Farm*, 918 F.2d 310, 311 (1st Cir. 1990) (citations omitted).

Ramírez maintains that Giannopulos, Caribbean, and Water failed to meet the 14-day filing requirement because they filed statements of interest on September 29, but the vessel was arrested on September 1. They counter that service did not occur on September 1 because notice was left with Carrasquillo, an independent contractor who has worked for Water but who was neither the master of the Commissioner nor a regular employee. Accordingly, they urge that their statements of interest were timely, as they were filed within 14 days of September 15—the date on which notice was published in *El Nuevo Día*. Essentially, parties dispute what constitutes "execution of process" under Rule C(6).

The First Circuit has explained that "execution of process" under Supplemental Rule C occurs once "(1) a properly issued warrant for arrest in rem has been properly executed, i.e., served upon the res; and, (2) the requisite notice has been given to potential claimants." *2,538.85*, 988 F.2d at 1286. In other words, the 14-day filing period begins only if both the vessel and a specific claimant have been served.

Supplemental Rule E discusses service on a res:

> If tangible property is to be attached or arrested, the marshal or other person or organization having the warrant shall take it into the marshal's possession for safe custody. If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent.

Supp. R. E(4). Local rules add that default judgment in an action in rem is inappropriate unless the party seeking default shows that

> due notice of the action and arrest of the property has been given: (1) by publication as required in L.Adm.R. C(2); (2) by service upon the master or other person having custody of the property; and, (3) by service under Fed. R. Civ. P. 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

L.Adm.R. C(3)(a).[1]

 In this case, evidence of service on the vessel consists of the declaration of Cintrón, who acted in lieu of the Marshal to arrest the Commissioner. *See* Dkt. 16. Cintrón stated that on September 1 he boarded the Commissioner, adhered a warrant of arrest and other relevant documents to a wall behind the helm, and gave the same documents to Carrasquillo, who identified himself as captain. *Id.* ¶¶ 4-5. Cintrón also served those documents on Marina PDR Operations LLC, the substitute custodian appointed by the court, through Mara Ruiz. *Id.* ¶ 3.

Caribbean and Water maintain that this process was insufficient because Carrasquillo is not the ship's master. Ricardo Fagundo Boothby ("Boothby"), President of Caribbean and Water, explains that Carrasquillo is an independent contractor who worked for Water and who has no relationship with Caribbean. Dkt. 60-1 ("Boothby Decl.") ¶¶ 5-6. He is not the master of the vessel, has not been authorized to represent himself as such, and has not been authorized to accept service or other process on Water's or Caribbean's behalf. *Id.* ¶¶ 4-7.

That Carrasquillo was an independent contractor does not defeat service on the res. Although Caribbean and Water's argument might have some technical appeal, I find their interpretation of the procedures governing service of a vessel too narrow to comport with the norms of admiralty law. First, I note that the rules governing service on a res require leaving "a copy of

---

[1] Caribbean and Water seem to suggest that Local Admiralty Rule C(3)(a) is dispositive with regard to what constitutes service on a res. This rule, although informative, refers to the notice that must be given as a general matter before the court enters a default judgment. Here, we are concerned with what constitutes execution of process so as to commence the running of the 14-day filing period under Supplemental Rule C(6). That period can start running for a particular claimant even if not all conditions of Local Admiralty Rule C(3)(a) have been met. For instance, if the res has been served and personal service made on an individual with a claim to the res, the 14-day period commences for that claimant, whether or not notice has also been given by publication. *See 2,538.85*, 988 F.2d at 1285.

the complaint and process with the person having possession or the person's agent." Supp. R. E(4). Similarly, local rules refer to "service upon the master or other person having custody of the property." L.Adm.R. C(3)(a). These rules contemplate service on the person with possession or custody of the res without imposing a requirement that said individual have a particular employment relationship with the owner of the vessel. Second, the Supreme Court has admonished that "admiralty practice . . . should not be tied to the mast of legal technicalities it has been the forerunner in eliminating from other federal practices." *British Transp. Comm'n v. United States*, 354 U.S. 129, 139 (1957). Indeed, "courts have long recognized admiralty's approach to do justice with slight regard to formal matters." *Contl. Grain Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) (citation and internal quotation marks omitted). Here, although Carrasquillo was an independent contractor, he boarded the ship and identified himself as captain. He thus appeared to be in possession of the vessel, and neither Caribbean nor Water suggests that he was not, in fact, the individual in possession on the date of arrest.

Moreover, admiralty law presumes that the vessel owner "will maintain reasonable contact with and continuing interest in the status and condition of the vessel" such that she will "receive the word" of any in rem action. *Ayala-Colon Sucres.,* 925 F. Supp. 2d at 203 (citing *MacDougalls' Cape Cod Marine Serv., Inc. v. One Christina 40′ Vessel*, 900 F.2d 408, 412 (1st Cir. 1990)). Neither Caribbean nor Water claims to have been left without actual notice of the action because process was served on Carrasquillo as opposed to someone else who might be found aboard the ship. And they have not identified anyone who they believe should have been served instead of Carrasquillo, leaving me to wonder whether a "master" of the vessel even exists. Indeed, were their argument to succeed, vessel owners could easily evade service of process by never hiring an official "master," instead relying exclusively on the labor of independent contractors. This evasion would undermine "the overarching goal of a maritime lien [for unpaid seaman's wages]," which is "to keep the channels of maritime commerce open by ensuring that those who service vessels have an efficient way of demanding reimbursement for their labor and are thus willing to perform the services necessary to keep vessels in operation." *Ayala-Colon Sucres.,* 925 F. Supp. 2d at 202–03.

Finally, service on Marina PDR Operations LLC, the court-appointed custodian, is unto itself sufficient to fulfill the requirement that service be made on the person having possession of the vessel. *Accord San Mateo County Harbor Dist. v. M/V Spirit of Sacramento*, 15-CV-01902-JD (SK), 2015 WL 13217074, at *3 (N.D. Cal. Dec. 4, 2015). For these reasons, I find that process was properly served on the Commissioner on September 1.

Of course, service on the res alone does not constitute "execution of process" for purposes of Supplemental Rule C(6). Particular claimants must also receive the requisite notice, and requisite notice may differ according to claimant. *2,538.85*, 988 F.2d at 1285-86.

As mentioned above, due to "the peculiar nature of admiralty process, the personification of the ship, normally warrants posting notice thereon to be considered a fair equivalent to personal notice to her owner." *MacDougalls'*, 900 F.2d at 412. Here, two parties have held themselves out as owner of the vessel of one sort or another—Giannopulos as record owner and Caribbean as the entity with a proprietary interest in the vessel. Although an owner of a vessel may rebut the presumption that she received notice of an action by means of posting notice to the vessel, *id.*, neither Giannopulos nor Caribbean has attempted to do so. Accordingly, I apply admiralty law's ownership presumption to Caribbean and Giannopulos and find that they received the requisite notice on September 1. This presumption does not apply, however, to Water, which asserts only a possessory interest in the vessel. The earliest date by which Water might have received the requisite notice is September 15, when notice of the action was published in *El Nuevo Día*. Thus, although Water's September 29 filing fell within the 14-day period permitted by Supplemental Rule C(6), Caribbean's and Giannopoulos's September 29 filings did not.

Even so, I decline to strike their statements of interest. Although courts may require strict compliance with Rule C(6)'s timing requirements, a statement filed outside the 14-day period is still deemed timely, so long as it made "within the time that the court allows," Supp. R. C(6), and a late filing may be excused. *MacDougalls'*, 900 F.2d at 409–10; *One Dairy Farm*, 918 F.2d at 311–12. Given "both old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally," "a district

judge should exercise his discretion to grant additional time for the filing of a claim . . . when the goals underlying the time restrictions and the verification [of the claim] are not thwarted." *United States v. One Urb. Lot Located at 1 St. A-1, Valparaiso, Bayamon, Puerto Rico*, 885 F.2d 994, 1001 (1st Cir. 1989) (citation and internal quotations omitted). Those goals are to prevent false claims and to assure that claimants come forward as soon as possible. *Id.*

In the instant case, I will not require strict compliance with the 14-day filing period given mitigating factors. "It should go without saying that the current public health crisis and resulting restrictions on civil and personal life are extraordinary circumstances by any measure." *Joseph v. United States*, 20-CV-02955-JD, 2020 WL 7202796, at *3 (N.D. Cal. Dec. 7, 2020) (permitting late filing during COVID-19 pandemic where plaintiff had exercised reasonable diligence in looking to hire a lawyer and any delay was of minimal duration). Boothby offered an affidavit in which he explained that he sought legal advice as soon as he learned of the arrest of the Commissioner. Boothby Decl. ¶ 9. He struggled to find representation, however, as many law firms were "either working remotely or refusing to accept new or time sensitive work due to the Covid-19 pandemic." *Id.* ¶ 9. It was not until September 16 that he was able to formally retain counsel. *Id.* ¶ 10. Additionally, notice of the arrest of the Commissioner was not published in the newspaper until September 15, and that notice provided as follows:

> [A]ny person asserting a right of possession or any ownership interest in the said vessel and/or all her engines, tackle, gear, appurtenances, etc. or other interests in the vessel, must file a verified statement of [] interest with the Clerk of the Court and a copy thereof served upon attorneys for plaintiff within fourteen (14) days after the publication of this notice.

Dkt. 22-1. It would thus come as no surprise to Ramírez that a statement of interest might be filed by September 29, when Giannopulos and Caribbean in fact filed. Permitting their filings thus does not prejudice Ramírez. And I see no indication that parties filed late because of needless delay or in an effort to bring a false claim. Under these circumstances, I find any late filing excusable. *Accord Leo v. Commr. of Soc. Sec.*, 18-CV-214-FPG, 2020 WL 4784582, at *2 (W.D.N.Y. Aug. 18, 2020) (permitting short delay in filing in part due to the "unprecedented pandemic that the country currently faces").

Next, I turn to Ramírez's contention that Giannopulos lacks standing because he sold the Commissioner to Caribbean.[2] Parties may intervene in an in rem action only where they have both statutory and constitutional standing. *United States v. One-Sixth Share Of James J. Bulger In All Present & Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003). Because I will permit his September 29 filing, Giannopulos has statutory standing. *See One Dairy Farm*, 918 F.2d at 311. To show constitutional standing, "a litigant must allege a distinct and palpable injury to himself, fairly traceable to the putatively illegal conduct of the defendant, and likely to be redressed by the requested relief." *United States v. U.S. Currency*, $81,000.00, 189 F.3d 28, 34 (1st Cir. 1999) (citations and internal quotation marks omitted). "At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." *One-Sixth Share*, 326 F.3d at 40–41. Here, Giannopulos admits that he sold the Commissioner to Caribbean. But that is not the end of the story. Giannopulos submitted a declaration in which he explained that he is still the record owner of the Commissioner as well as the mortgagor on the first mortgage encumbering the vessel. Dkt. 20-1 ¶¶ 4-7. As the mortgagor, Giannopulos maintains that he faces foreclosure in the event of adverse action against the vessel. Dkt. 55 at 7. Additionally, Giannopulos stated that he retains a possessory interest in the vessel. Giannopulos Decl. ¶ 2. Although Giannopulos might have done more to elaborate on his interest in the vessel in light of his admission that he sold it, at this stage his statements are sufficient to show at least a colorable claim on the property.[3] Accordingly, his statement of interest need not fail for want of standing.

Ramírez also seeks an order apportioning custodia legis expenses among claimants. *See* Dkt. 35. "It is a well-established tenet of admiralty law that the arresting plaintiff and the intervening plaintiffs share in the costs of maintaining the res until resolution of the case."

---

[2] Standing is a threshold question. I address it here because the timeliness of Giannopulos's filing, discussed above, also decides his statutory standing.

[3] Of course, because standing is a constitutional requirement, Ramírez may raise this issue again if it comes to light that Giannopulos no longer has an interest sufficient to satisfy Article III's case-or-controversy requirement.

*Lubricantes Venoco, Intern., C.A. v. M/V NEVERIS*, 60 Fed. Appx. 835, 841–42 (1st Cir. 2003) (unpublished). An admiralty court's authority to allocate custodial expenses is "flexible and equitable." *Mullane v. Chambers*, 438 F.3d 132, 138 (1st Cir. 2006) (citing *The Poznan*, 274 U.S. 117, 120-23 (1927)); *accord Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 354 (5th Cir. 1997) ("[T]he district court enjoys broad equitable authority over the administration of maritime seizures."); *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc*., 821 F.2d 1556, 1559-60 (11th Cir. 1987) (lienholders and claimants in in rem action potentially liable for "proportionate share" of custodial costs); *Gulf Copper & Manufacturing Corporation v. M/V Lewek Express*, No. 19-cv-00034, 2019 WL 2435848, *3 (S.D. Tex. June 11, 2019) (explaining that, where reasonable, a court may order per capita apportionment of custodia legis expenses). But the apportionment of costs among all parties may not be appropriate where the costs of keeping a vessel were incurred because of a frivolous or bad-faith claim. *See Taino Lines, Inc. v. M/V Constance Pan A*., 982 F.2d 20, 24 (1st Cir. 1992).

The court is not in a position to apportion custodia legis expenses, if apportionment is indeed appropriate. Claimants maintain that they should not be required to pay custodia legis expenses because Ramírez's claims are either exaggerated or lacking any legal basis. Ramírez brought suit alleging that he was due seaman's wages amounting to $48,461.70. He also asserted entitlement to penalty wages amounting to $149,345.04 as of August 6, 2020 (and accruing daily thereafter) pursuant to 46 U.S.C § 10313(g). But as claimants point out, penalty wages under Section 10313(g) do not apply to wages earned on a yacht, *see* 46 U.S.C § 10313(h), and Ramírez himself characterizes the Commissioner as a yacht. Dkt. 1 at 1. Further, the application of Section 10313 is limited to vessels on certain intercoastal or foreign voyages, *see* 46 U.S.C. § 10301(a)(1), (2), but Ramírez does not represent that the Commissioner was on such a voyage. Caribbean, Water, and Giannopulos maintain that Ramírez intentionally demanded exaggerated damages with the hope that claimants would not appear, he would obtain a default judgment, and he would collect damages to which he is not in fact entitled. Dkt. 54 at 2, Dkt. 59 at 2. And Caribbean maintains that Ramírez and his counsel knew that Caribbean had a proprietary interest in the Commissioner

Ramírez-Alonso v. M/Y the Commissioner, *et al.*, Civil No. 20-1451 (BJM)                    11

but nonetheless declined to name Caribbean as a defendant or serve process or notice on its principals. *See* Boothby ¶ Decl. 8. Essentially, claimants accuse Ramírez of incurring custodia legis expenses largely because he raised a frivolous or bad-faith claim.

Ramírez has not responded to these allegations, although he requested, and the court granted, a motion for extension of time to do so. Dkts. 64, 67. The sharing of storage costs in admiralty courts is a matter committed to the court's discretion and based on principles of equity. *Mullane*, 438 F.3d at 138. In the interest of fairness, I decline to require claimants to share custody costs at this juncture, where Ramírez has offered no explanation for taking a position that may have been taken in bad faith or without basis in law. Ramírez's motion is thus denied without prejudice.

Ramírez may renew his motion to apportion custodia legis expenses only if he addresses claimants' contention that he brought exaggerated claims lacking any legal basis. Further, he must first make a good faith effort to meet and confer with parties regarding the apportionment of custodia legis expenses. If parties, acting in good faith, can reach an agreement with regard to cost-sharing, they must submit a proposed agreement to the court for approval. Should Ramírez renew his motion, all claimants must clearly specify the amount they claim and its relationship to the "sum of all claims" as referred to in Local Admiralty Rule E(11)(b).[4]

Finally, HNB requests a hearing under Supplemental Rule E(4)(f).[5] Dkt. 48 at 4. This will be scheduled by separate order.

---

[4] "An intervenor shall owe a debt to the first plaintiff, enforceable on motion, consisting of the intervenor's share of the marshal's fees and expenses in the proportion that the intervenor's claim bears to the sum of all the claims. If a party plaintiff permits vacation of an arrest, attachment, or garnishment, remaining plaintiffs share the responsibility to the marshal for fees and expenses in proportion to the remaining claims and for the duration of the marshal's custody because of each claim." L. Adm. R. E(11)(b).

[5] "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules. This subdivision shall have no application to suits for seamen's wages when process is issued upon a certification of sufficient cause filed pursuant to Title 46, U.S.C. §§ 603 and 604 or to actions by the United States for forfeitures for violation of any statute of the United States." Supp. R. E(4)(f).

## CONCLUSION

For the foregoing reasons, the motions to strike and apportion custodia legis expenses are

**DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of December 2020.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge